United States District Court
District of Massachusetts

| | |
|---|---|
| Arch Insurance Co., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Civil Action No. |
| The Graphic Builders LLC ) | 19-12445-NMG |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |
| ) | |

**MEMORANDUM & ORDER**

**GORTON, J.**

This case arises out of an alleged breach by The Graphic Builders LLC ("TGB" or "defendant") of a Performance Bond issued by Arch Insurance Company ("Arch" or "plaintiff") in connection with a commercial construction contract. Plaintiff seeks a judgment declaring that it is discharged from liability under the surety bond based on TGB's failure to comply with an express and unambiguous condition precedent.

Defendant, the general contractor, on the other hand, seeks a judgment declaring that Arch, as the surety, has an obligation under the bond to indemnify TGB independent from any condition precedent and that its failure to do so constitutes a breach of the Performance Bond and unfair and deceptive conduct in violation of M.G.L. c. 93A, §§ 2 & 11 ("Chapter 93A").

- 1 -

Pending before this Court are 1) defendant's motion to amend its counterclaim and 2) plaintiff's motion for summary judgment on its claim for declaratory relief and all counterclaims asserted by defendant. For the reasons that follow, defendant's motion will be denied and plaintiff's will be allowed.

## I. Background

Arch is a Missouri corporation with its principal place of business in New Jersey. It claims this Court has diversity jurisdiction over this action for a declaratory judgment against TGB, a Massachusetts limited liability company.

### A. The Agreements

In or about May, 2017, TGB entered into a contract with 32 Cambridge Street, LLC to construct an apartment building in the Charlestown section of Boston, Massachusetts ("the Project"). A few months later, TGB executed a subcontract with R.C.M. Modular Inc. ("RCM") for certain modular construction work in connection with the Project. The subcontract required RCM, inter alia, to fabricate, deliver and assemble modular components of the apartment building, warrant that all work by RCM will be free from defects and indemnify TGB for any cost or damage arising from that work.

In November, 2017, Arch issued a Performance Bond ("Performance" or "Surety" Bond) covering RCM's work on the

Project.[1]  That agreement provided that RCM and Arch agree to, "jointly and severally, bind themselves . . . to [TGB] for the performance of the [subcontract]" which has been incorporated therein by reference.  Relevant to the pending motions, Section 3 of the bond adds that the obligations thereunder of the surety (Arch) arise only after:

> 1) [TGB] provides notice to [RCM] and the Surety that [TGB] is considering declaring a Contractor Default . . .;
>
> 2) [TGB] declares a Contractor Default, terminates the Construction Contract and notifies the Surety; and
>
> 3) [TGB] has agreed to pay the Balance of the Contract Price in accordance with the terms of the Construction Contract to the Surety or to a contractor selected to perform the Construction Contract.

By May, 2018, RCM had fabricated, delivered and begun installing the modular units for the Project.  Soon thereafter, TGB complained that the units were defective, namely, that more than 260 windows were leaking and the exterior of the modules were misaligned, among other things.  Despite the defects, TGB did not, however, terminate the subcontract with RCM because, in its own words, doing so "would be the equivalent of shooting [itself] in the face".  TGB, instead, unilaterally arranged for various third-party subcontractors to remediate RCM's work at a

---

[1] The Performance Bond issued by Arch is the 2010 version of an American Institute of Architect form known as the A-312 performance bond.

cost of more than $2.8 million and subsequently sent several requests to Arch and RCM seeking indemnification therefor.

### B. Communications Between the Parties

Between October, 2018, and April, 2019, TGB issued several letters to Arch and RCM notifying them that TGB was considering declaring RCM in default of the subcontract and requesting contractual warranty and indemnification payments. In April, 2019, representatives of all three entities met to discuss matters relating to RCM's non-performance but were unable to resolve the dispute.

Later that month, TGB sent to RCM and Arch another letter which, pursuant to Section 3.1 of the Performance Bond, declared RCM in default of the subcontract but noted that TGB was "not yet terminating its subcontract with RCM". Arch sent a written response 1) to confirm its receipt of the notice, 2) to refuse TGB's request for contractual warranty and indemnification payments and 3) to acknowledge that TGB had not terminated its subcontract with RCM.

In the following months, TGB sent Arch several notices of default with respect to Arch's performance under the Performance Bond and declared that Arch owed TGB $3 million, the purported cost of remediating RCM's work. Arch, in response, rejected TGB's demand and denied liability under the Performance Bond based on TGB's failure to terminate the subcontract with RCM.

**C. Procedural History**

In December, 2019, Arch filed this suit seeking a declaration that TGB has materially breached the Performance Bond by failing to terminate RCM as a subcontractor, a condition precedent, thereby rendering the bond null and void and discharging Arch from liability thereunder.  In January, 2020, TGB counterclaimed that Arch, independent from any condition precedent, is required by the Performance Bond to cure RCM's defective work, indemnify TGB and issue it warranty payments. TGB asserts three counts: breach of the Performance Bond (Count I); unfair and deceptive conduct in violation of Chapter 93A (Count II) and a claim for declaratory judgment (Count III).

On June 5, 2020, TGB moved to supplement its counterclaim pursuant to Fed. R. Civ. P. 15.  It seeks to add factual allegations which arose after it filed its counterclaims, namely, that Arch retaliated against TGB for asserting a Chapter 93A claim by

> threaten[ing] TGB that absent withdrawal of the [Chapter 93A] Counterclaim, it would terminate its surety relationship with Tocci (TGB's parent company).

(parentheses in original).  TGB did not withdraw the claim and, "in retaliation of TGB's refusal", Arch allegedly terminated its surety relationship with TGB's corporate parent (Tocci) which purportedly caused Tocci to lose out on a $35 million project.

Finally, TGB submits that Tocci has assigned all of its rights against Arch to TGB.

A few weeks later, Arch moved for summary judgment, contending that Section 3 of the Performance Bond unambiguously provides conditions precedent to its obligation to perform under the bond agreement. Arch submits that terminating the subcontract with RCM is one such condition which TGB has not satisfied. That failure, Arch avers, discharges it from liability under the Performance Bond and warrants entry of summary judgment in its favor.

TGB disagrees, rejoining that there is no condition precedent to Arch's obligation to indemnify and issue a warranty to TGB for defects in RCM's work because Section 1 of the Performance Bond renders Arch jointly and severally responsible for all of RCM's obligations under the subcontract. TGB submits that the Performance Bond distinguishes between 1) claims that require the surety to complete work on the Project, for which termination of the subcontract is a condition precedent and 2) claims that simply require the surety to reimburse TGB for damages caused by RCM's breach of the subcontract, for which there is no condition precedent. That alleged distinction is purportedly based on the fact that the subcontract authorizes TGB to correct deficiencies of and seek indemnification from its subcontractor without termination.

## II. Motion to Supplement

### A. Legal Standard

Because defendant's motion to "amend" is based on events which occurred subsequent to the filing of its original counterclaim, it will be treated as a motion to supplement pursuant to Fed. R. Civ. P. 15(d). See Structural Systems, Inc. v. Sulfaro, 692 F. Supp. 34, 35 (D. Mass. 1988). Rule 15(d) gives courts wide discretion in deciding whether to allow or deny leave to supplement pleadings. U.S. ex rel. Gadbois v. PharMerica Corp., 809 F.3d 1, 6-7 (1st Cir. 2015). A court acts within that discretion if it denies leave for reasons of, inter alia, bad faith, unjustifiable delay, undue prejudice to the opposing party or futility of supplementation. Id. at 7.

### B. Application

The seminal reason for denying leave to supplement here is futility. In assessing futility, the court applies "the same standard of legal sufficiency as applies to a Rule 12(b)(6) motion". Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996). To survive a 12(b)(6) motion, a counterclaim must contain "sufficient factual matter" to state a claim for relief that is actionable as a matter of law and "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 667 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A

counterclaim is facially plausible if, after accepting as true all non-conclusory factual allegations, the court can draw the reasonable inference that the defendant is liable for the misconduct alleged. Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011).

A court may not disregard properly pled factual allegations even if actual proof of those facts is improbable. Id. Rather, the relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw. Id. at 13. When rendering that determination, a court may not look beyond the facts alleged in the complaint, documents incorporated by reference therein and facts susceptible to judicial notice. Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011).

Chapter 93A prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce". M.G.L. c. 93A, § 2. A Chapter 93A claim must allege a practice that 1) is within the penumbra of some common law, statutory or other established concept of unfairness, 2) is immoral, unethical, oppressive or unscrupulous and 3) causes substantial injury to consumers, competitors or other business entities. Mass Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 412 F.3d 215, 243 (1st Cir. 2005) (quoting PMP Assocs., Inc. v. Globe Newspaper Co., 321 N.E.2d 915, 917 (1975)).

Here, defendant's motion to supplement is futile because the new allegations are conclusory, reciting only threadbare accusations that Arch "threatened" TGB and, "in retaliation[,] . . . terminated its bonding relationship with Tocci" which caused Tocci to lose out on a $35 million project. See Penalbert-Rosa v. Fortuno-Burset, 631 F.3d 592, 595 (1st Cir. 2011) ("some allegations, while not stating ultimate legal conclusions, are nevertheless so threadbare or speculatory that they fail to cross the line between the conclusory and the factual." (internal quotation marks omitted) (quoting Twombly, 550 U.S. at 557 n.5)).  Missing from the proposed supplemental pleading is any factual allegation detailing, for instance, by whom, to whom, when and how the threat was made.  Also missing is any factual allegation illuminating how Arch's purported termination of the surety relationship caused Tocci to lose out on a bid on a $35 million project. See A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 81 (1st Cir. 2013) (finding allegations of causation to be conclusory where the complaint merely stated that, "[b]ut for" the Case Report, the plaintiffs' malpractice trials "would have been successful"(brackets in original)).  Without more, TGB has failed to state a claim for retaliation in violation of Chapter 93A.

Furthermore, TGB's motion was filed just before the summary judgment deadline and seeks to insert into this litigation the

interest of a third-party. It serves only to delay the proceedings and prejudice the plaintiff and will, accordingly, be denied.

### III. **Motion for Summary Judgment**

Arch, the surety, contends that it is entitled to summary judgment declaring that it is exonerated and discharged from any and all liability relating to the Performance Bond based on the failure of the general contractor, TGB, to comply strictly with the express and unambiguous conditions precedent therein. TGB retorts that 1) no condition precedes Arch's obligation under the Performance Bond and the incorporated subcontract to investigate TGB's claim, indemnify TGB and issue it a warranty for any and all cost and damage arising from deficiencies in RCM's work and 2) Arch's failure to so perform constitutes a breach of the Performance Bond and unfair and deceptive conduct in violation of Chapter 93A.

Resolution of every claim and counterclaim, and thus plaintiff's summary judgment motion, depends entirely upon the language of the Performance Bond, specifically, whether Section 3, in fact, unambiguously imposes conditions precedent to any obligation of the surety. Because this Court concludes that the language in Section 3 clearly and unambiguously imposes such conditions precedent, it will enter summary judgment in favor of Arch.

### A. Legal Standard

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)). The burden is on the moving party to show, through the pleadings, discovery and affidavits, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A fact is material if it "might affect the outcome of the suit under the governing law . . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

If the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The Court must view the entire record in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993). Summary judgment is appropriate if, after viewing the record in the non-moving

party's favor, the Court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Celotex Corp., 477 U.S. at 322-23.

### B. Application

Under Massachusetts law, a condition precedent is an event which must occur "before an obligation to perform arises under the contract." Mass. Mun. Wholesale Elec. Co. v. Town of Danvers, 577 N.E.2d 283, 288 (Mass. 1991). Without the occurrence of that event, "the obligations attached to the condition[ ] may not be enforced". Id.

The interpretation of a performance bond, and whether it imposes a condition precedent, is a question of law for the court. See Enterprise Capital, Inc. v. San-Gra Corp., 284 F. Supp. 2d 166, 179 n.21 (D. Mass. 2003) ("Whether the provisions outlined in Paragraph 3 of the Performance Bond are conditions precedent is a question of law for the Court to decide."); Sullivan v. Southland Life Ins. Co., 854 N.E.2d 138, 141 (Mass. App. Ct. 2006). When the language therein is clear and unambiguous, "its interpretation is appropriately decided on summary judgment", Sullivan, 854 N.E.2d at 141, and its "plain and ordinary meaning" controls. Enterprise Capital, 284 F. Supp. 2d at 175. The language of a performance bond is not deemed ambiguous "merely because the parties urge different interpretations". Evergreen Partnering Group, Inc. v. Pactiv

Corp., No. 11-cv-10807, 2014 WL 199631, at *3 (D. Mass. Jan. 17, 2014).

Here, this Court concludes that the Performance Bond clearly and unambiguously imposes conditions precedent which must occur before Arch is required to perform any of its obligations thereunder. Several other courts interpreting analogous language, including another Session of this Court, have concluded likewise. See, e.g., Enterprise Capital, 284 F. Supp. 2d at 179 n.21 (construing language identical to Section 3 and finding that the provisions therein "were indeed conditions precedent", in part, because "other courts have consistently interpreted the language of this Performance Bond—'the Surety's obligation under this Bond shall arise after . . .' to indicate the listing of conditions precedent" (citing North Am. Specialty Ins. Co. v. Cichester School Dist., No. 99-cv-2394, 2000 WL 1052055, at *16 (E.D. Pa. July 20, 2000); Bank of Brewton, Inc. v. Intn'l Fidelity Inst. Co., 827 So.2d 747, 753 (Ala. 2002)); Sonoma Springs Ltd Partnership v. Fidelity & Deposit Co. of Md, 409 F. Supp. 3d 946, 952 (D. Nev. 2019) (interpreting the provisions in Section 3 of the Performance Bond to impose conditions precedent); see also Stonington Water St. Assoc., LLC v. Hodess Bldg. Co., 792 F. Supp. 2d 253, 262–63 (D. Conn. 2011) ("[C]ompliance with the conditions precedent [set forth in Section 3] is necessary in order to invoke the surety's

obligation under the performance bond and failure to do [so] is fatal to the obligee's claim for coverage.").

The most relevant section of the Performance Bond to the pending summary judgment motion is Section 3. That section provides that the obligations of the surety (Arch) under the agreement arise only after:

> 1) [TGB] provides notice to [RCM] and the Surety that [TGB] is considering declaring a Contractor Default . . .;
>
> 2) [TGB] declares a Contractor Default, terminates the Construction Contract and notifies the Surety; and
>
> 3) [TGB] has agreed to pay the Balance of the Contract Price in accordance with the terms of the Construction Contract to the Surety or to a contractor selected to perform the Construction Contract.

That language clearly and unambiguously imposes several conditions which precede all of Arch's obligations to perform under the Performance Bond. No provision in the bond or the incorporated subcontract distinguishes between claims as to which the conditions precedent are or are not applicable.

At issue here is Section 3.2 which unambiguously sets forth the condition that TGB must, inter alia, terminate its subcontract with RCM to obligate the surety's performance. It is undisputed that TGB never terminated that subcontract but, instead, unilaterally arranged for third-party subcontractors to remediate RCM's work. Indeed, TGB admitted as much and stated that terminating the subcontract would be "shooting [itself] in

- 14 -

the face". Accordingly, TGB indisputably failed to comply with a condition precedent and, therefore, cannot enforce the obligation of Arch to indemnify which arises pursuant to the Performance Bond and/or the incorporated subcontract.

For the same reason, this Court finds that TGB materially breached the Performance Bond and that Arch will be discharged from any and all liability relating thereto, including investigating and indemnifying TGB's claims thereunder. See Stonington Water Street, 792 F. Supp. 2d at 267 (concluding that a project owner's failure to terminate the contractor and its unilateral decision to hire successor contractors constituted a material breach of the performance bond (citing Enterprise Capital, 284 F. Supp. 2d 166)). It follows that TGB's counterclaims which rely on Arch's alleged failure to perform its obligations under the bond agreement (i.e., breach of Performance Bond and violation of Chapter 93A) cannot withstand summary judgment in the surety's favor.

In an apparent last-ditch effort to avoid summary judgment, TGB contends in its opposition memorandum that it was unable to satisfy the termination requirement of Section 3.2 because RCM had "substantially completed" its work under the subcontract and thus could not be terminated. That argument is, however, unavailing. First, no provision in the subcontract forecloses TGB's right to terminate the subcontract after "substantial

completion" by the subcontractor.  Rather, Section 16.2 of the subcontract provides, in the event RCM violates any provision of the subcontract, that TGB may

> terminate the employment of [RCM] and take possession of the site and of all materials, equipment, tools, construction equipment and machinery thereon owned by [RCM], and [RCM] shall not be entitled to receive any further payment until all the Work is <u>fully</u> completed.

Second, in prior submissions, representatives of TGB have stated that they consciously chose not to terminate RCM because doing so did not give TGB "the warm and fuzzies".  It was not because termination was impossible or impracticable.  Given that TGB could have terminated RCM but chose not to do so, in contravention of a condition precedent imposed by Section 3.2, this Court will enter summary judgment in favor of Arch on all claims and counterclaims.

## ORDER

For the foregoing reasons, defendant's motion to amend (Docket No. 18) is **DENIED** and plaintiff's motion for summary judgment (Docket No. 25) is **ALLOWED.**

**So ordered.**

\s\ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated February 12, 2021